UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| KRISTINA GIBEAU, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br>v.<br><br>MASON COMPANIES INC.,<br><br>　　　　Defendants. | Case No.: 20-cv-822<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. This class action seeks redress for collection practices that violate the Truth in Lending Act and its implementing regulations, 15 U.S.C. § 1601 *et seq*. ("TILA") and 12 C.F.R. § 226 *et seq.* ("Regulation Z"), and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

# JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1640, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its lending and collection activities into the District.

# PARTIES

3. Plaintiff Kristina Gibeau is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "person" as defined in TILA, 15 U.S.C. § 1602(e), in that Plaintiff is a natural person who obtained consumer credit pursuant to an open-end credit plan.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that Plaintiff engaged in a consumer transaction.

6. Defendant Mason Companies, Inc. ("Mason") is a Wisconsin corporation with its primary place of business at 1251 1st Avenue, Chippewa Falls, Wisconsin 54729.

7. Mason does business under fictitious, trade, and/or brand names, including "Stoneberry," "Mason Easy-Pay," and "K.Jordan," among others.

8. Mason is a retailer of home goods and clothing, operating primarily over the internet and through catalog sales.

9. Mason allows consumers to purchase goods under open-end credit plans.

10. Mason is a "creditor" as defined in TILA, 15 U.S.C. § 1602(j).

11. Mason is also a "merchant," "creditor," and "debt collector" as defined in the WCA, Wis. Stat. §§ 421.301 and 427.103, in that Mason extends open-end credit to consumers and collects the debts arising from those transactions.

**FACTS**

12. Sometime during Spring or Summer 2019, Plaintiff purchased goods from Defendant's "K.Jordan" brand retailer pursuant to an open-end "K.Jordan credit" plan.

13. Plaintiff was issued an account number that could be used to access a line of additional credit to purchase goods or services. The account was a "credit card" as defined in TILA, 15 U.S.C. § 1602 and 12 C.F.R. § 1026.2(a)(15), and the WCA, Wis. Stat. § 421.301(15). *See* Cmt. 2(ii)(C) ("if the account number can also access the line of credit to purchase goods or services (such as an account number that can be used to purchase goods or services on the internet), the account number is a credit card for purposes of § 1026.2(a)(15)(i), regardless of whether the creditor treats such transactions as purchases, cash advances, or some other type of transaction.").

14. Within about one week of purchase, Plaintiff returned the goods to cancel the account. Plaintiff paid the cost of the return shipping out-of-pocket.

15. Defendant continued to bill Plaintiff for several months after the return in connection with the costs of return shipping (which Plaintiff had paid herself) and restocking.

16. On August 23, 2019, Defendant mailed an account statement to Plaintiff regarding this account. A copy of this account statement is attached to this complaint as Exhibit A.

17. Upon information and belief, Exhibit A is a form account statement, generated by computer and with information specific to Plaintiff inserted by computer.

18. Exhibit A contains the following:

> **Late Payment Warning:** If we do not receive your minimum payment by the date listed above you may have to pay a $15.00 late fee.
> **Minimum Payment Warning:** Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance.
>
> *K. Jordan*
> **Payment Information**
>
> | If you make no additional charges using this card each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
> |---|---|---|
> | Only the minimum payment | 5 months | $29.21 |
>
> If you would like information about credit counseling services, call 1-877-388-7280.
>
> **New Balance** $24.21   **Payment Due Date** 09/20/2019   **Minimum Payment** $13.98

Exhibit A.

19. Exhibit A states that the "New Balance" of the debt, as of August 23, 2019, was $24.21, the "Minimum Payment" was $13.98, and that the "Payment Due Date" was September 20, 2019.

20. Exhibit A further states that, if Mason does not receive the consumer's minimum payment by September 20, 2019, the consumer may incur a $15.00 late fee.

21. On or about August 30, 2019, Plaintiff obtained a bank check from Landmark Credit Union in the amount of $24.21.

22. Shortly thereafter, Plaintiff caused this check to be mailed to Defendant.

23. On or about September 24, 2019, Mason mailed an account statement to Plaintiff regarding this account. A copy of this account statement is attached to this complaint as Exhibit B.

24. Upon information and belief, Exhibit B is a form account statement, generated by computer and with information specific to Plaintiff inserted by computer.

25. Exhibit B states:

| DATE | REFERENCE NO | Transactions DESCRIPTION | PURCHASES/ CHARGES | PAYMENTS/ CREDITS |
|---|---|---|---|---|
| 09/04/2019 | 0151 | PAYMENT THANK YOU | | 24.21 |
| | | FEES | | |
| 09/02/2019 | 1986 | LATE CHARGE | 13.98 | |
| | | INTEREST CHARGED | | |
| 09/24/2019 | 4025 | FINANCE CHARGE | 1.00 | |

At WWW.KJORDAN.COM you can shop hundreds of web exclusive items and sign up for email updates so you're always the first to know about our next big sale.

Exhibit B.

26. Exhibit B states that Defendant received and processed Plaintiff's payment in the amount of $24.21 on September 4, 2019, more than two weeks before the "Payment Due Date" stated in Exhibit A.

27. However, Exhibit B states that Defendant added a late charge to the account on September 2, 2019, two days before Defendant processed the payment.

28. After receiving Exhibit B, Plaintiff contacted Defendant by telephone to inform Defendant that the account should have been paid in full and request that Defendant correct its billing error.

29. The representative that Plaintiff spoke with told her that the additional amounts were for "shipping." This representation was false. Plaintiff had paid the return shipping out-of-pocket and had already been billed for the initial shipping of the product to her.

30. Notwithstanding Plaintiff informing Defendant about its mistake, Defendant has continued to mail Plaintiff statements each month, and has continued to add additional late and finance charges, causing the balance to increase far beyond the original price of the item Plaintiff originally purchased and returned.

4

31. As of March 24, 2020, the "New Balance" on the account was $95.98.

32. TILA requires that creditors mail consumers periodic account statements that include, "in a conspicuous location on the billing statement, the date on which the payment is due or, if different, the date on which a late payment fee will be charged, together with the amount of the fee or charge to be imposed if payment is made after that date." 15 U.S.C. § 1637(b)(12)(A); *see also,* 12 C.F.R. § 1026.7(b)(11)(i)(A).

33. TILA also requires that creditors mail consumers periodic account statements that disclose "the date by which or the period (if any) within which payment must be made to avoid additional finance charges[.]" 15 U.S.C. § 1637(b)(9); *see also,* 12 C.F.R. § 1026.7(b)(8).

34. According to Exhibit A, Plaintiff could avoid a late fee by tendering the "Minimum Payment" stated in Exhibit A on or before September 20, 2019.

35. According to Exhibit A Plaintiff could avoid additional finance charges by paying the "New Balance" stated in Exhibit A in full on or before September 20, 2019.

36. According to Exhibit B, Plaintiff paid the "New Balance" stated in Exhibit A in full on September 4, 2019.

37. According to Exhibit B, Defendant added a "Late Charge" to Plaintiff's account on September 2, 2019.

38. In response to Plaintiff's inquiries, Defendant refused to dismiss the "Late Charge" that was added on September 2, 2019 and any additional charges that accrued as a result.

39. As a result of this "Late Charge," Defendant determined that Plaintiff failed to satisfy the account in full, and has continued to add additional finance charges and late fees.

40. Moreover, under the WCA, Defendant should not have added a delinquency charge unless the account remained unpaid for more than 10 days after the scheduled payment was due.

5

*See*, Wis. Stat. § 422.203(2) ("No delinquency charge may be collected on an installment which is paid in full on or before the 10th day after its scheduled or deferred due date even though an earlier maturing installment or a delinquency charge on an earlier installment may not have been paid in full."). The Bureau of Consumer Financial Protection's ("CFPB") official commentary to Regulation Z states that the account issuer "must disclose the due date under the terms of the legal obligation … and not a date different than the due date, such as when the card issuer is restricted by account agreement or state or other law from imposing a late payment fee unless a payment is late for a certain number of days following the due date[.]" Cmt. 2 to 12 C.F.R. § 1026.7(b)(11).

41. The imposition of a late fee, and the avoidance of additional late fees and interest, is of material importance to the consumer, and the failure to provide accurate information as to how the consumer may avoid a late fee creates a risk of concrete harm that is particularized to the consumer. *See, e.g.,* 15 U.S.C. § 1637(b)(12).

42. Plaintiff was misled and confused by Exhibits A-B, and Defendant's conduct with respect to the account.

43. The ordinary consumer would be misled and confused by Exhibits A-B, and Defendant's conduct with respect to the account.

### *TILA and Regulation Z*

44. TILA creates substantive rights for consumers. Violations of TILA and its implementing regulations cause injury to consumers, and such injuries are concrete and particularized. *See, e.g., Mathers v. HSBC Bank*, No. 16-cv-9572, 2018 U.S. Dist. LEXIS 136070, at *6 (N.D. Ill. Aug. 13, 2018) ("TILA provides consumers with substantive rights beyond the disclosure of information."); *see also, Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337, 344-46 (7th Cir. 2018) (interpreting the Fair Debt Collection Practices Act and explaining that a plaintiff

6

has standing when the complaint alleges a risk of concrete harm). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1640.

45. Moreover, Congress has explicitly described its purpose in enacting TILA "to assure a meaningful disclosure of credit terms ... and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

46. Plaintiff has been injured by Defendant's conduct. Defendant is representing that Plaintiff owes money she does not owe.

47. 15 U.S.C. § 1637(b)(12)(A) states:

**(12) Requirements relating to late payment deadlines and penalties.–**

**(A)** Late payment deadline required to be disclosed.–

In the case of a credit card account under an open end consumer credit plan under which a late fee or charge may be imposed due to the failure of the obligor to make payment on or before the due date for such payment, the periodic statement required under subsection (b) with respect to the account shall include, in a conspicuous location on the billing statement, the date on which the payment is due or, if different, the date on which a late payment fee will be charged, together with the amount of the fee or charge to be imposed if payment is made after that date.

48. 12 C.F.R. § 1026.7(b)(11)(i)(A) states:

**(11) Due date; late payment costs.**

**(i)** Except as provided in paragraph (b)(11)(ii) of this section and in accordance with the format requirements in paragraph (b)(13) of this section, for a credit card account under an open-end (not home-secured) consumer credit plan, a card issuer must provide on each periodic statement:

**(A)** The due date for a payment. The due date disclosed pursuant to this paragraph shall be the same day of the month for each billing cycle.

49. 15 U.S.C. § 1637(b)(9) states:

7

**(b) Statement required with each billing cycle.** The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

…

> (9) The date by which or the period (if any) within which, payment must be made to avoid additional finance charges, except that the creditor may, at his election and without disclosure, impose no such additional finance charge if payment is received after such date or the termination of such period.

50. 12 C.F.R. § 1026.7(b)(8) states:

**1026.7 Periodic statement.**

The creditor shall furnish the consumer with a periodic statement that discloses the following items, to the extent applicable:

> **(b) Rules affecting open-end (not home-secured) plans**
>
> …
>
> > **(8) Grace period.** The date by which or the time period within which the new balance or any portion of the new balance must be paid to avoid additional finance charges. If such a time period is provided, a creditor may, at its option and without disclosure, impose no finance charge if payment is received after the time period's expiration.

### *The WCA*

51. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2)

52. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is

"probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

53. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

54. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

55. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

56. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory, actual, and punitive damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15 (Wis. 2010). In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59. Wis. Stat. § 425.302 creates a cause of action for "all violations for which no other remedy is specifically provided" by the WCA.

60. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

61. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

62. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt, or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – TILA AND REGULATION Z

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. According to Exhibit A, Plaintiff could avoid a late fee by tendering the "Minimum Payment" stated in Exhibit A on or before September 20, 2019.

65. According to Exhibit A Plaintiff could avoid additional finance charges by paying the "New Balance" stated in Exhibit A in full on or before September 20, 2019.

66. According to Exhibit B, Plaintiff paid the "New Balance" stated in Exhibit A in full on September 4, 2019.

10

67. According to Exhibit B, Defendant added a "Late Charge" to Plaintiff's account on September 2, 2019.

68. In response to Plaintiff's inquiries, Defendant refused to dismiss the "Late Charge" that was added on September 2, 2019 and any additional charges that accrued as a result.

69. As a result of this "Late Charge," Defendant determined that Plaintiff failed to satisfy the account in full, and has continued to add additional finance charges and late fees.

70. Defendant violated 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.7(b)(11).

## COUNT II – WCA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. According to Exhibit A, Plaintiff could avoid a late fee by tendering the "Minimum Payment" stated in Exhibit A on or before September 20, 2019.

73. According to Exhibit A Plaintiff could avoid additional finance charges by paying the "New Balance" stated in Exhibit A in full on or before September 20, 2019.

74. According to Exhibit B, Plaintiff paid the "New Balance" stated in Exhibit A in full on September 4, 2019.

75. According to Exhibit B, Defendant added a "Late Charge" to Plaintiff's account on September 2, 2019.

76. In response to Plaintiff's inquiries, Defendant refused to dismiss the "Late Charge" that was added on September 2, 2019 and any additional charges that accrued as a result.

77. As a result of this "Late Charge," Defendant determined that Plaintiff failed to satisfy the account in full, and has continued to add additional finance charges and late fees.

11

78. Defendant violated Wis. Stat. §§ 422.203, 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT III – DECLARATORY RELIEF

79. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. According to Exhibit A, Plaintiff could avoid a late fee by tendering the "Minimum Payment" stated in Exhibit A on or before September 20, 2019.

81. According to Exhibit A Plaintiff could avoid additional finance charges by paying the "New Balance" stated in Exhibit A in full on or before September 20, 2019.

82. According to Exhibit B, Plaintiff paid the "New Balance" stated in Exhibit A in full on September 4, 2019.

83. According to Exhibit B, Defendant added a "Late Charge" to Plaintiff's account on September 2, 2019.

84. In response to Plaintiff's inquiries, Defendant refused to dismiss the "Late Charge" that was added on September 2, 2019 and any additional charges that accrued as a result.

85. As a result of this "Late Charge," Defendant determined that Plaintiff failed to satisfy the account in full, and has continued to add additional finance charges and late fees.

86. Plaintiff is entitled to a judicial declaration that the account has been paid in full.

## CLASS ALLEGATIONS

87. Plaintiff brings this action on behalf of a Nationwide Class, consisting of:

(a) all natural persons in the United States of America, (b) who were sent an account statement in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between June 2, 2019 and June 2, 2020, inclusive, (e) that stated that payment must be received by a certain date to avoid a late fee and/or additional finance charges,

12

(f) who tendered payment on or before that date, and (g) whose account accrued a late fee or additional finance charges notwithstanding Defendant's receipt of payment before the due date stated in the account statement in the form of <u>Exhibit A</u>.

88. Plaintiff also brings this action on behalf of a Wisconsin Class, consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent an account statement in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between June 2, 2019 and June 2, 2020, inclusive, (e) that stated that payment must be received by a certain date to avoid a late fee and/or additional finance charges, (f) who tendered payment on or before that date, and (g) whose account accrued a late fee or additional finance charges notwithstanding Defendant's receipt of payment before the due date stated in the account statement in the form of <u>Exhibit A</u>.

89. Each Class is so numerous that joinder is impracticable.

90. Upon information and belief, there are more than 50 members of each Class.

91. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with TILA and the WCA.

92. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

93. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

94. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

95. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) declaratory and injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: June 2, 2020

                                        **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com